UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>ANGEL RODRIGUEZ | No. 3:19-cr-58 (SRU) |

### ORDER ON MOTION FOR SENTENCE REDUCTION

Angel Rodriguez, currently incarcerated at FCI Berlin, filed the instant motion for a reduction of his sentence, which is his second sentence reduction motion. Rodriguez argues that the ongoing COVID-19 pandemic, his pre-existing medical conditions that render him more susceptible to COVID-19, his rehabilitation, and his caregiving responsibilities warrant a reduction of his sentence to time served under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). *See* Mot. for Sentence Reduction, Doc. No. 76.

The government opposes the motion on the grounds that Rodriguez has not demonstrated extraordinary and compelling reasons to warrant a sentence reduction, and that the 18 U.S.C. § 3553(a) factors counsel against release. *See* Opp'n to Mot. for Sentence Reduction, Doc. No. 83.

For the following reasons, Rodriguez's motion for a reduction of his sentence is **denied**.

### I.     Background

On October 15, 2019, Rodriguez pleaded guilty (pursuant to a plea agreement) before Magistrate Judge William I. Garfinkel to a lesser-included offense of count one and to count two of an indictment charging him with (1) possession with intent to distribute, and distribution of, fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and (2) possession of a firearm

in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).[1] *See* Plea Agreement, Doc. No. 35. On January 7, 2020, I sentenced Rodriguez to 84 months' imprisonment (24 months on count one and the mandatory minimum 60 months on count two, to run consecutively) and three years' supervised release. *See* Judgment, Doc. No. 53.

In the time between his arrest and his sentencing, Rodriguez was released on bond. *See* Doc. No. 12. At sentencing, Rodriguez faced a mandatory minimum sentence of five years (on count two), and a Guidelines range of 106 to 117 months' imprisonment. *See* PSR, Doc. No. 41, at ¶¶ 68–69. Balancing the seriousness of the crime and Rodriguez's proven success on pretrial release, I sentenced Rodriguez to a below-Guidelines sentence of seven years' imprisonment. *See* Hr'g Tr., Doc. No. 61, at 17:10-16. After granting three motions for extension of time to self-surrender on account of the onset of the COVID-19 pandemic, I ordered Rodriguez to self-surrender on July 15, 2020. *See* Doc. No. 65.

On January 26, 2021, Rodriguez filed a *pro se* motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act. *See* Doc. No. 67. I denied that motion on April 7, 2021, in large part because, at the time, Rodriguez had only served approximately 9 months of his 84-month sentence. *See* Doc. No. 75.

On August 1, 2022. Rodriguez filed another motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *See* Doc. No. 76. On December 19, 2022, counsel filed a supplemental memorandum in support of that motion, along with various exhibits. *See* Doc. No 78. Rodriguez, who is now 31 years old, is currently housed at the Federal Correctional Institute,

---

[1] The indictment charged Rodriguez in count one with a violation of 21 U.S.C. § 841(b)(1)(B)(vi), which carries a five-year mandatory minimum penalty. *See* Indictment, Doc. No. 21. But in the plea agreement, Rodriguez agreed to plead guilty to a violation of 21 U.S.C. § 841(b)(1)(C), a lesser-included offense of count one that does not include any mandatory minimum penalty. *See* Plea Agreement, Doc. No. 35, at 1.

2

Berlin ("FCI Berlin"), a medium security federal correctional institution. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Sept. 12, 2024). Rodriguez's scheduled release date is September 10, 2026. *See id.* He has been incarcerated since his self-surrender on July 15, 2020. *See* Doc. No. 65. Rodriguez has thus served 51 months in prison, which is approximately two-thirds of his sentence (accounting for good-time credit).

I assume familiarity with the basic background of Rodriguez's criminal case, as set forth in my order denying Rodriguez's first motion for sentence reduction. *See* Doc. No. 75. In the instant motion to reduce his sentence, doc. no. 76, Rodriguez asserts the same reasons why he believes his sentence should be reduced—his susceptibility to COVID-19 and his rehabilitation in prison—in addition to arguing that his family circumstances warrant his immediate release.

Also pending is Rodriguez's motion for expedited review of his sentence reduction motion, doc. no. 85, which he filed on December 21, 2023. The government opposed that motion on January 12, 2024. *See* Doc. No. 86.

**II.     Standard of Review**

As amended by the First Step Act, 18 U.S.C. § 3582(c) authorizes sentencing courts to reduce a term of imprisonment if, after considering the applicable factors set forth in section 3553(a), it concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). A court may make such a modification only "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary. That section was amended, effective November 1, 2023, and now provides an expanded list of "extraordinary and compelling reasons" warranting compassionate release. *See* U.S.S.G. § 1B1.13.

The defendant bears the burden of proving that he or she is entitled to a sentence reduction. *United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020) (internal citations omitted).

### III. Discussion

A. Exhaustion

As an initial matter, the government argues that Rodriguez failed to exhaust his administrative remedies. *See* Doc. No. 83, at 6-7. The First Step Act requires a defendant to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or wait 30 days after "the receipt of such a request by the warden of the defendant's facility" before filing a motion in federal court. 18 U.S.C. § 3582(c)(1)(A). Specifically, the government argues that Rodriguez never filed a request for administrative remedies. *See* Doc. No. 83, at 7. It appears, however, that Rodriguez did submit a request for relief to the warden of his facility on May 19, 2022, *see* doc. no. 78-1, and more than 30 days passed between Rodriguez's submission of that request and his filing of his *pro se* motion for compassionate release. *See* Doc. No. 76-1 (copy of envelope stamped with date July 18, 2022). *See also See United States v. Resnick*, 451 F. Supp. 3d 262, 268–69 (S.D.N.Y. Apr. 2, 2020) (for purposes of the section 3582 exhaustion requirement, the thirty-day period commences when the request was submitted to prison officials). However, Rodriguez submitted his letter requesting administrative relief to the wrong email address. *See* Doc. No. 83, at 7

4

(explaining that requests for compassionate release should be sent to the facility's Social Worker, not to the general "Warden" email address).

In any event, the administrative exhaustion requirement of section 3582(c)(1)(A) is a mandatory "claim-processing rule," rather than a "jurisdictional limitation." *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021). Courts can and do "waive[] § 3582(c)(1)(A)'s exhaustion requirement in contexts where exhaustion would be futile, incapable of granting adequate relief, or would result in undue prejudice." *United States v. Johnson*, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023). In this case, even if Rodriguez failed to satisfy the requirement that he exhaust his administrative remedies because he improperly submitted his request to the warden, I conclude that the exhaustion requirement should be waived because it would be futile.[2]

Requiring Rodriguez to exhaust administrative remedies would almost certainly result in the BOP denying or failing to respond to his request. *Id.* at 277 ("[T]he BOP has abdicated the responsibility of bringing compassionate release motions to defendants who generally lack formal or informal legal training, all while retaining the ability to impede and delay such defendants' ability to be heard."). The United States Sentencing Commission's records indicate that in Fiscal Year 2023, courts within the Second Circuit heard 92 motions for compassionate release, and granted 36 (39.1%) of those motions. U.S. Sent'g Comm'n, Compassionate Release Data Report: Fiscal Year 2023 Table 3 (2023). Of those successful motions, not a single one was brought by the BOP. *Id.* at Table 5. The same trend holds true for Fiscal Year 2024 thus far. Of

---

[2] I note that section 3582(c)(1)(A) merely requires that a request for compassionate release is received "by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). It is therefore unclear to me whether the government is correct that Rodriguez's email to the general "Warden" email address was an insufficient method of exhausting his administrative remedies. However, I need not address that issue because I determine that the administrative exhaustion requirement should be waived.

69 motions heard by courts in the Second Circuit, 27 were granted (39.1%), and not a single successful motion was brought by the BOP. U.S. Sent'g Comm'n, Compassionate Release Data Report: Fiscal Year 2024, Third Quarter Cumulative Tables 3, 5 (2024). I therefore conclude that, especially in light of the considerable amount of time that has passed since Rodriguez filed his *pro se* motion and his representation that he filed another request for relief from the warden in January 2023, *see* doc. no. 84, at 1, exhaustion would be futile.

I now turn to the merits of Rodriguez's motion.

B. <u>Extraordinary and Compelling Reasons</u>

Rodriguez has not satisfied his burden of demonstrating that "extraordinary and compelling reasons" warrant a reduction of his sentence. *See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13.

First, Rodriguez explains that he has various pre-existing medical conditions that put him at an increased risk of severe illness from COVID-19. Those conditions include hypertension, obesity, poor liver function, absence of a spleen, and asthma. *See* Doc. No. 78, at 8. Though Rodriguez's medical records largely confirm those diagnoses, *see generally* doc. no. 80, the risk of COVID-19 does not amount to an extraordinary and compelling reason warranting a reduction of Rodriguez's sentence.

There is no evidence that Rodriguez's medical conditions, and his related vulnerability to COVID-19, is not well-managed in BOP custody. In fact, since I denied his first motion for release, Rodriguez has been vaccinated against COVID-19. *See id.*, at 98. Moreover, he tested positive for COVID-19 in January of 2022, and recovered without serious illness or complications. *See* Medical Records, Doc. No. 81, at 3-12. Since vaccines have become widely available, courts have routinely denied motions for compassionate release filed by defendants with well-managed underlying conditions much like Rodriguez's. *See, e.g., United States v.*

6

*Gotti,* 2022 WL 16848237, at *6 (D. Conn. Nov. 10, 2022) ("[W]hile Mr. Gotti has medical conditions that may put him at risk of severe illness if he were to contract COVID-19, in light of the ongoing treatment and control of his conditions, [and] his vaccination status . . . Mr. Gotti has failed to demonstrate extraordinary and compelling circumstances warranting relief."); *United States v. Bailey*, 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-controlled. Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance."). Therefore, given that the risk COVID-19 poses to Rodriguez has only lessened since I denied his previous motion for sentence reduction in 2021, I find that it does not amount to an extraordinary and compelling reason warranting a reduction of his sentence.

Rodriguez also explains that his children's mother, Ms. Aguilar, is an unreliable caretaker for their children. *See* Mot. for Sentence Reduction, Doc. No. 76, at ¶ 5; Mot. for Expedited Review, Doc. No. 85. A letter from Rodriguez's sister Vanessa, submitted with Rodriguez's *pro se* motion, confirms Rodriguez's account of Ms. Aguilar's unstable parenting and explains that Rodriguez's two sisters are forced to help care for the children in Rodriguez's absence. *See* Doc. No. 76, at 17. Nonetheless, Rodriguez's family circumstances, while obviously difficult, do not amount to an extraordinary and compelling reason warranting his release. The applicable policy statement provides that compassionate release may be granted due to family circumstances in the event of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children. . . ." U.S.S.G. § 1B1.13(b)(3)(A). Rodriguez does not allege that the caregiver for his children has died or become incapacitated. Instead, he alleges that Ms. Aguilar's difficulties subject his children to a chaotic and unstable home. *See* Doc. No. 85, at 1. As other Courts

7

within this Circuit have pointed out, the family circumstances described by Rodriguez are unfortunately not "extraordinary." *See, e.g., United States v. Akram*, 568 F. Supp. 3d 295, 298 (W.D.N.Y. 2021) ("Unfortunately, families often suffer due to the criminal conduct and subsequent incarceration of one of their members, and Defendant's family is likely no exception to this harsh reality."). Additionally, as the government points out in its opposition, Rodriguez fails to establish that he will reside with his children or become the primary caregiver of his children upon release, or that there are no other available caregivers in his absence. *See* Doc. No. 83, at 16. Therefore, especially considering the fact that granting compassionate release would not be consistent with the factors set forth at 18 U.S.C. § 3553(a), as I will explain below, I conclude that Rodriguez's difficult family circumstances do not rise to the level of an extraordinary and compelling reason warranting sentence reduction.

Finally, Rodriguez points to his own rehabilitation and his mostly discipline-free record in prison as support for his motion. *See* Docs. No. 78-2, 78-4. However, "the rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). Having determined that no other extraordinary and compelling reason exists to reduce Rodriguez's sentence, his rehabilitation alone is insufficient.

C. Section 3553(a) Factors

When considering any motion for compassionate release I must consider the factors set forth in section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. Pursuant to section 3553(a), I must impose a sentence that is sufficient, but not greater than necessary, to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with training, medical care, and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). I must also examine other factors, including the nature and

8

circumstances of the offense and the history and characteristics of the defendant. *Id.* § 3553(a)(1).

Just as I did when I decided Rodriguez's first motion for compassionate release in 2021, I conclude that Rodriguez's current sentence of 84 months of imprisonment is the "shortest sentence sufficient to serve the purposes of sentencing." Doc. No. 75, at 13. Rodriguez's offense was extremely serious—a very large quantity (200 grams) of fentanyl was involved, and Rodriguez possessed a dangerous firearm. *See* PSR, Doc. No. 41, at ¶ 11-12. The sentence I imposed was also substantially below his Guidelines range of 106 to 117 months of imprisonment. *See id.* at ¶¶ 68–69. Reducing Rodriguez's term of imprisonment any further would therefore not reflect the seriousness of the offense, promote respect for the law, or provide adequate deterrence.

Rodriguez's arguments regarding the section 3553(a) factors are largely repetitive of the arguments he put forth as "extraordinary and compelling reasons" for a reduction of his sentence. *See* Doc. No. 78, at 16-23. He primarily argues that the COVID-19 pandemic has made his time in prison more punitive than it otherwise would have been. *Id*. But, as explained previously, Rodriguez has now been vaccinated and has not presented any evidence that the BOP is failing to manage the risk that COVID-19 poses to him. Though I have no doubt that Rodriguez has suffered because of the harsh pandemic-related conditions of confinement in BOP custody—which are, to some extent, ongoing—I was aware of the effects of the pandemic when I denied Rodriguez's first motion in 2021, and my analysis is unchanged. *See* Doc. No. 75, at 13-14.

### IV.   Conclusion

For the foregoing reasons Rodriguez's motion to reduce his sentence, doc. no. 76, is **denied**. Rodriguez's motion for expedited review, doc. no. 85, is **denied as moot**.

9

It is so ordered.

Dated at Bridgeport, Connecticut, this 18th day of October 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge